UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY CORNACCHIA, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>UKG INC. and TUFTS MEDICAL CENTER,<br><br>　　　　　　Defendants. | Civil Action No. 4:22-cv-40081-ABD |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF A SETTLEMENT CLASS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

   I.    BACKGROUND OF LITIGATION. ........................................................................ 2

   II.   SUMMARY OF PROPOSED SETTLEMENT ........................................................ 3

ARGUMENT ....................................................................................................................... 4

   I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE. ........................... 4

     A.   The Settlement is Substantively Fair. .................................................................. 4

       1.   The Action Is Complex And Further
            Litigation Would Be Expensive And Lengthy. ............................................. 5

       2.   The Reaction Of The Class Is Overwhelmingly Positive. ........................................ 6

       3.   The Current Stage Of The Action And
            The Discovery That Has Occurred Favor Final Approval. ............................................ 9

       4.   Plaintiff Faces Substantial Risks In Establishing Liability And Damages. .............. 10

       5.   Maintaining The Class Action Through Trial May Be Challenging. ...................... 11

       6.   Defendant's Ability To Withstand A Greater Judgement Is Neutral. ...................... 12

       7.   The Settlement Amounts Are Reasonable In Light Of The Best
            Possible Recovery And In Light Of All The Attendant Risks Of Litigation. ........... 12

     B.   The Settlement Is Procedurally Fair. .................................................................. 14

       1.   The Settlement Was Reached After Arm's-Length Negotiations. ........................... 14

       2.   The Direct Notice To Settlement Class
            Members Satisfies Due Process And Is Reasonable. ................................................ 15

   II.   APPROVAL OF THE FLSA SETTLEMENT
       IS APPROPRIATE PURSUANT TO 29 U.S.C. § 216(b). .............................................. 17

   III.  THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS. .............. 19

CONCLUSION .................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Anderson v. Team Prior, Inc.*,
   No. 19-00452, 2022 U.S. Dist. LEXIS 196144 (D. Me. Oct 28, 2022) ........................... 16, 17

*Brayak v. New Bos. Pie, Inc.*,
   292 F. Supp. 3d 520 (D. Mass. 2017) ................................................................... 16

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 59 (D. Mass. 1999) ..................................................... 10, 14-15, 16

*City Pshp. Co. v. Atlantic Acquisition Ltd. Pshp.*,
   100 F.3d 1041 (1st Cir. 1996) ............................................................................ 13

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................................... 12

*Greenspun v. Bogan*,
   492 F.2d 375 (1st Cir. 1974) ................................................................................ 7

*Gulbankian v. MW Mfrs., Inc.*,
   No. 10-10392, 2014 U.S. Dist. LEXIS 177668 (D. Mass. Dec. 29, 2014) ....................... 7, 14

*Hamilton v. SunTrust Mortg. Inc.*,
   No. 13-60749, 2014 U.S. Dist. LEXIS 154762 (S.D. Fla. 2014) ......................................... 8-9

*Hill v. State St. Corp.*,
   No. 09-12146, 2014 U.S. Dist. LEXIS 179702 (D. Mass. Nov. 26, 2014) ................. 6, 11, 12

*Hochstadt v. Boston Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ...................................................................... 9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) ................................................................... 15, 16

*In re First Commodity Corp. Customer Accounts Litigation*,
   119 F.R.D. 301 (D. Mass. 1987) .......................................................................... 11

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3rd. Cir. 1995) ............................................................................... 13

*In re Lupron Mktg. & Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) ................................................................. *passim*

*In re Relafen Antitrust Litig.*,
   231 F.R.D. (D. Mass. 2005) ........................................................................ 7, 8, 11

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
   No. 06-5173, 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) .................................. 12

*In re Stockeryale, Inc.*,
    No. 05-00177, 2007 U.S. Dist. LEXIS 94004 (D.N.H. Dec. 18, 2007) ................................ 9

*In re Sturm*,
    No. 09-1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012) ............................ 11

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ................................................................... 4, 5

*Kane v. Gage Merchan. Serv., Inc.*,
    138 F. Supp. 2d 212 (D. Mass. 2001) ..................................................................... 17

*Klapatch v. BHI Energy I Power Servs., LLC*
    No. 18-11581, 2019 U.S. Dist. LEXIS 28134 ....................................................... 16

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
    No. 17-10219, 2017 U.S. Dist. LEXIS 87928 (D. Mass. June 8, 2017) ................................ 14

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d (S.D.N.Y. 2002) ............................................................................ 6

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
    602 F. Supp. 2d 277 (D. Mass. 2009) ...................................................................... 4

*Oppenlander v. Standard Oil Co.*,
    64 F.R.D. 597 (D. Colo. 1974) .............................................................................. 6

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................................... 8

*Poertner v. Gillette Co.*,
    618 Fed. Appx. 624 (11th Cir. 2015) ...................................................................... 8

*Prescott v. Prudential Ins. Co.*,
    729 F. Supp. 2d 357 (D. Me. 2010) .................................................................... 16, 17

*Reyes v. City of Rye*,
    No. 13-9051, 2017 U.S. Dist. LEXIS 103096 (S.D.N.Y. June 30, 2017) ............................ 12

*Roberts v. TJX Cos.*,
    No. 13-13142, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sep. 30, 2016) .................... *passim*

*Robinson v. Nat'l Student Clearinghouse*,
    14 F.4th 56 (1st Cir. 2021) ................................................................................... 13

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) .......................................................................... 6, 14

*Sabol v. Hydroxatone LLC*,
    No. 11-04586, 2013 U.S. Dist. LEXIS 166520 (D.N.J. Nov. 22, 2013) ................................ 8

*Touhey v. United States*,
    No. 08-1418, 2011 U.S. Dist. LEXIS 81308 (C.D. Cal. July 25, 2011) ................................. 8

*Wise v. Patriot Resorts Corp.*
    No. 04-30091, 2006 U.S. Dist. LEXIS 97992 (D. Mass. Feb. 15, 2006) ............................... 17

**<u>Statutes</u>**

29 U.S.C. § 216 ................................................................................................................. 16, 18

29 U.S.C. §§ 201 ...................................................................................................................... 2

**<u>Other</u>**

Federal Rule of Civil Procedure 23 ................................................................... *passim*

Mary Cornacchia ("Plaintiff") submits this application for final approval of the proposed settlement (the "Settlement") of this action (the "Action") with Defendant Tufts Medical Center, Inc. ("Tufts") (together, the "Settling Parties"), and certification of the settlement class.

## INTRODUCTION

On December 13, 2023, this Court entered an order preliminarily approving the Settlement and requiring that notice be provided to settlement class members. ECF No. 62. Since receiving notice, the Class and Collective (together, the "Settlement Class") has had an excellent reaction to the Settlement. To date, zero Settlement Class members have objected or opted out of the settlement. Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.") ¶ 30.

The Settlement Class's positive reaction to the Settlement is unsurprising, as this Settlement ensures that participating Settlement Class members will receive more money than they would have received if Defendant UKG, Inc. ("UKG") had not allowed criminals to obtain Settlement Class members' confidential information ("Kronos Outage") and caused Tufts to fail to timely pay Settlement Class members. Frei-Pearson Decl. ¶ 21.

Under the Settlement, which was reached after mediation conducted by the Honorable Diane M. Welsh (ret.), Tufts will provide a settlement fund in the value of $494,000.00 (the "Settlement Fund"), *see* Settlement Agreement ¶ V.a, which shall be distributed to all Class and Collective members who submit a valid and timely claim through a simple claims process, pursuant to the Settlement Agreement. Settlement Agreement ¶ V.c.(5). Under the Settlement, each participating Settlement Class member shall receive a payment in proportion to their approximate potential damages, with a minimum payment of $50.00. *Id*. According to the Settlement Administrator's calculation, the average payment to participating Settlement Class members is $840.37 and the highest is $4,062.12. Frei-Pearson Decl. ¶ 19.

1

Significantly, this Settlement is substantially stronger than similar settlements stemming from many employers' failure to pay proper wages as a result the Kronos Outage. *See Woodruff v. Kaiser Aluminum Corp.,* No. 22-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (approving a reversionary settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $205 and a minimum recovery of $40); *Marshall v. Coca-Cola Consolidated Inc.*, Case No. 22-00214, ECF. No. 22 (W.D.N.C. June 27, 2023) (preliminarily approving a settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $244 and a minimum recovery of $40); *Estevez v. Change Healthcare Inc.,* Case No 3:22-cv-327, ECF No. 34 (M.D. Tenn. June 13, 2023) (approving a reversionary settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $343.70 and a minimum recovery of $50).

Accordingly, Plaintiff requests that the Court enter an order finally certifying the proposed Settlement Class and approving the Settlement.

## STATEMENT OF FACTS

### I.    BACKGROUND OF LITIGATION.

On July 20, 2022, Plaintiff Mary Cornacchia commenced this litigation against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the Massachusetts Wage Act for underpayments resulting from the Kronos Outage. Frei-Pearson Decl. ¶ 9; ECF No. 1.

On October 19, 2022, Tufts filed a motion to dismiss Plaintiff's Wage Act Claim. ECF. Nos. 18-19. And on the same date, UKG, Inc. filled a motion to dismiss for failure to state a claim. ECF No. 20-21. Both motions to dismiss were fully briefed. Frei-Pearson Decl. ¶ 10.

The Settling Parties engaged in preliminary discovery.  Frei-Pearson Decl. ¶ 11.  After each side was in a position to evaluate the merits, strengths and weaknesses of the claims or defenses, the Settling Parties agreed to engage in arm's-length negotiations, concluding in a mediation with an experienced mediator, Ret. Judge Diane Welsh, of JAMS.  Frei-Pearson Decl. ¶ 13.  On December 13, 2023, this Court preliminarily approved the Settlement and ordered CAC Service Group, LLC (the "Administrator") to disseminate a notice via first class mail and by email to known Settlement Class members and a reminder notice via postcard.  ECF No. 62.

## II.    SUMMARY OF PROPOSED SETTLEMENT.

Under the Settlement, Tufts will fund an all-in payment of $494,000.00 that will fund direct payments to the Class and Collective members who opt-in, attorneys' fees and litigation costs, settlement administration costs, and service award payment.  Settlement Agreement ¶ V.a.  The FLSA Collective consists of all hourly employees of Tufts, who, according to Tufts's records, did not receive timely payment of wages as a result of the Kronos Outage, who consent to join this settlement by completing and returning a valid and timely FLSA Consent Form.  Settlement Agreement ¶ II.c.  The Massachusetts Wage Act Class consists of all hourly employees of Tufts, who, according to Tufts's records, did not receive timely payment of wages as a result of the Kronos Outage.  Settlement Agreement ¶ II.e.

Each participating Settlement Class member shall receive a payment in proportion to their approximate potential damages, with a minimum payment of $50.00.  Settlement Agreement ¶ V.c.(5).  According to the Settlement Administrator's calculation, the average payment to participating Settlement Class members is $840.37 and the highest is $4,062.12.  Frei-Pearson Decl. ¶ 19.  Unclaimed funds will revert back to Tufts.  Settlement Agreement ¶ V.c.(6).  Class and Collective members participating in this settlement will, ultimately, receive more money as

liquidated damages than they would have received if there had been no wage and hour violations. Frei-Pearson Decl. ¶ 21. The Settlement Class contains 522 members who are entitled to receive payment under the Settlement. Frei-Pearson Decl. ¶ 20.

The Administrator sent the notice packet to the Settlement Class by first class mail and email on February 23, 2024 (the "Notice"), and reminder notices via postcard to Settlement Class members who had not made a claim on April 8, 2024. Frei-Pearson Decl. ¶ 24. Plaintiff and Class Counsel have worked diligently to inform Settlement Class members about the settlement and have regularly been in touch with representatives of the Massachusetts Nurse's Association ("MNA"), which represents the vast majority of the Settlement Class. Frei-Pearson Decl. ¶ 26. Settlement Class members had until May 23, 2024 to participate in the Settlement or to opt out or object. Frei-Pearson Decl. ¶ 28. To date, approximately 27.01% of Settlement Class members have participated. Frei-Pearson Decl. ¶ 29. And as of the same date, no Settlement Class member has objected or opted-out of the Settlement. Frei-Pearson Decl. ¶ 30.

## ARGUMENT

### I. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

#### A. The Settlement is Substantively Fair.

As courts in this circuit have recognized, "the law favors class action settlements." *In re Lupron Mktg. & Sales Practices Litig.,* 228 F.R.D. 75, 88 (D. Mass. 2005). Moreover, "there is a presumption in favor of the settlement if the parties negotiated it at arms-length, after conducting meaningful discovery." *Roberts v. TJX Cos.,* 2016 U.S. Dist. LEXIS 136987, at *18 (D. Mass. Sep. 30, 2016) (Burroughs, J.).

Federal Rule of Civil Procedure 23(e) requires that a class action settlement be "fair, reasonable and adequate" in order to merit final approval. "The First Circuit has not established a

fixed test for evaluating the fairness of a settlement." *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc*., 602 F. Supp. 2d 277, 280 (D. Mass. 2009) (citing *In re Tyco Int'l, Ltd. Multidistrict Litig*., 535 F. Supp. 2d 249, 259 (D.N.H. 2007)). Accordingly, courts within the First Circuit look to factors considered by other Circuits. In *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc*., the Court recognized the *Grinnell* factors:

> In this Circuit, many courts have relied on the factors set forth by the Second Circuit to determine the fairness of a settlement:
> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. 280-281 (quoting *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974)). *See also In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 93-94 (D. Mass. 2005) (noting that *Grinnell* has supplied the "most commonly referenced factors" and proceeding to apply them). The *Grinnell* factors militate in granting final approval of the Settlement.

### 1. The Action Is Complex And Further Litigation Would Be Expensive And Lengthy.

The Settlement Agreement provides substantial monetary benefits to the proposed Settlement Class while avoiding the significant expenses, delays, and risks attendant to discovery and motion practice related to summary judgement and class certification. In reviewing a wage and hour class settlement under the FLSA and state law, this Court has found that these types of cases are "heavily fact and time-intensive". *TJX Cos*., 2016 U.S. Dist. LEXIS 136987 at *21. The Settlement was achieved only after the parties actively engaged preliminary discovery, mediation, and additional post-mediation settlement discussions. Frei-Pearson Decl. ¶¶ 11-15.

In absence of the Settlement, continued litigation would result in additional factual discovery, time-consuming depositions, extensive motion practice, including motions to dismiss, for class certification, and for summary judgment. Such motion practice would prove extremely time-consuming and expensive. Also, if the Action survives summary judgment, the Settling Parties will then engage in a fact-intensive trial, resulting in further delay and expense. In reviewing this factor, this Court found in *TJX Cos.*, "[t]he parties' proposed Settlement avoids the significant time and expense that they would incur preparing this case for trial on the merits." 2016 U.S. Dist. LEXIS 136987 at *21-22.

Moreover, any judgment would likely be appealed, extending the costs and duration of the Action. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to Settlement Class members, providing important relief. *See Hill v. State St. Corp.,* 2014 U.S. Dist. LEXIS 179702, at *19 (D. Mass. Nov. 26, 2014) ("The complexity of this case and the expense and delay that would result if this case were litigated through further motion practice, trial and appeals strongly support approval of the Settlement."); *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) (quoting *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974)) ("When comparing 'the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation,' there are clearly strong arguments for approving a settlement."). Thus, this factor weighs in favor of approving the Settlement.

### 2. The Reaction Of The Class Is Overwhelmingly Positive.

Courts give "great weight" to Class members' reaction to a class action settlement. *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d (S.D.N.Y. 2002); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. at *80 (D. Mass. 2005). Here, 522 notices were sent to Settlement Class members by First Class mail and email on February 23, 2024, and reminder notices have been sent

via postcard to Settlement Class members who had not made a claim on April 8, 2024. Frei-Pearson Decl. ¶ 24. Settlement Class members can also submit claim forms through the Administrator's website. *Id*. ¶ 24. Settlement Class members had until May 23, 2024 to participate in, opt-out, or object to the Settlement. *Id*. ¶ 28.

To date, there have been zero requests for exclusion or objections to the Settlement. Frei-Pearson Decl. ¶ 30. This absence of any opt-outs and objections weighs heavily in favor of approval. *See Greenspun v. Bogan*, 492 F.2d 375, 380 (1st Cir. 1974) ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a settlement]."). *See also Gulbankian v. MW Mfrs., Inc.,* 2014 U.S. Dist. LEXIS 177668, at *8 (D. Mass. Dec. 29, 2014) (citing *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005)) ("Reaction to a settlement is positive when the number of objectors is minimal compared with the number of claimants, provided notice effectively reached absent class members."). Moreover, Plaintiff and Class Counsel have worked diligently to inform Settlement Class members about the settlement. Frei-Pearson Decl. ¶ 26. Class Counsel fielded numerous questions from Settlement Class members. *Id*. ¶ 26. Class Counsel has also been in regular contact with the MNA, and has answered questions and provided information about the settlement to union representatives. *Id*. ¶ 27. The Notice effectively reached Settlement Class members. To date, with zero objections or opt-outs, the Settlement Class's response was overwhelmingly positive. *Id*. ¶ 28. *Compare In re Relafen Antitrust Litig*., 231 F.R.D. at 72 (D. Mass. 2005) (reaction to settlement was positive with 5,489 claims, 140 opt-outs, and 10 objections); *Lupron*, 228 F.R.D. at 96 (reaction to settlement was positive with 10,614 consumer claims, 49 opt-outs, and 10 objectors).

To date, 141 or approximately 27.01% of Settlement Class members submitted a claim to participate in the Settlement. Frei-Pearson Decl. ¶ 29. This Settlement produced a substantial claim submission rate. This court has routinely approved class settlements with similar or lower class participation rates. *See e.g., Hopkins v. Modernize, Inc.,* 17-cv-40087, ECF. No. 108 (D. Mass. Oct. 9, 2019) (approving class settlement where 8,710 out of 263,248 class members or approximately 3.3% class members participated.); *Tsui v. Walmart Inc*., 1:20-cv-12309, ECF. No. 48 (D. Mass. Oct. 15, 2022) (approving class settlement where approximately 21.3% class members participated); *Barr v. Drizly, LLC F/K/A Drizly, Inc. et al*, 1:20cv11492, ECF No. 80 (D. Mass. Nov. 22, 2021) (approving class settlement where approximately 6.16% of class members participated). Courts around the country have approved claims-made class settlements where the claims rate was significantly lower. *See, e.g., Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 625-26 (11th Cir. 2015) (approving 7.26 million-member settlement class when just 55,346 -- less than 1% -- filed claims); *In re Relafen Antitrust Litig*., 231 F.R.D. 52 (D. Mass. 2005) (approving 836,750-member settlement class when 5,489 -- less than 1% -- filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 -- approximately 1.1% -- filed claims); *Sabol v. Hydroxatone LLC*, No. 11-04586, 2013 U.S. Dist. LEXIS 166520, at *5, *62 (D.N.J. Nov. 22, 2013) (approving class settlement where the claims rate was 1.4%); *Arthur v. SLM Corp.*, No. 10-198 (W.D. Wash. Aug. 8, 2012), ECF No. 249 at 2-3 (approving class settlement where the claims rate of approximately 2%); *Touhey v. United States*, 2011 U.S. Dist. LEXIS 81308, at *21-22 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable – 38 responses out of 1,875 notices mailed – where there were no objections and the overall recovery was fair and reasonable); *Rolland v. Spark Energy,*

*LLC,* No. 17-02680 (D.N.J. Dec. 6, 2022), ECF No. 197 (approving class settlement with a 4.0% claims rate).

Although courts look to claims rate to gauge class reaction to a proposed settlement, "[t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Hamilton v. SunTrust Mortg. Inc*., 2014 U.S. Dist. LEXIS 154762, at *15 (S.D. Fla., Oct. 24, 2014). *See also TJX,* 2016 U.S. Dist. LEXIS 136987 at *22 ("[T]hose class members who did respond have reacted positively to the proposed Settlement.  The parties have received no objections to the Settlement, and only 3 class members have asked to be excluded.").  Here, the participating Settlement Class members will receive more money than they would have received if there had been no wage and hour violations.  Frei-Pearson Decl. ¶ 21.

The absence of opt-outs and absence of objections, coupled with a substantial claims rate, weighs in favor of the Settlement.

### 3.  The Current Stage Of The Action And The Discovery That Has Occurred Favor Final Approval.

The Settlement was achieved at a time when the parties and their counsel were sufficiently knowledgeable about the strengths and weaknesses of their claims and defenses that they were able to make well-informed decisions regarding the Settlement.  *See In re Stockeryale, Inc*., 2007 U.S. Dist. LEXIS 94004, at *9 (D.N.H. Dec. 18, 2007) (approving settlement where "Class counsel had the benefit of information obtained through document discovery and its extensive own investigation" and "the settlement agreement was reached after significant negotiations between the parties before an experienced mediator"); *see also Hochstadt v. Boston Sci. Corp*., 708 F. Supp. 2d 95, 107 (D. Mass. 2010) ("[T]he applicable standard, which does not require that discovery be

completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement.").

Class Counsel conducted a thorough investigation of Plaintiff's claims, and Tufts's counsel did so as well. Before the Settlement, the parties fully briefed a motion to dismiss and engaged in informal discovery. Frei-Pearson Decl. ¶ 10. Furthermore, prior to the mediation, the parties were familiar with the law surrounding Tufts's anticipated defenses to this action. *Id.* ¶ 12. The Settling Parties prepared for and attended mediation before Honorable Diane M. Welsh (ret.) and engaged in additional settlement discussions. *Id*. ¶ 13. Thus, the stage of the proceedings supports approval of the Settlement.

### 4.    Plaintiff Faces Substantial Risks In Establishing Liability And Damages.

While Plaintiff is confident in her ability to prove her cases, substantial hurdles in establishing liability and damages remain. *See Bussie v. Allmerica Fin. Corp.,* 50 F. Supp. 2d 59, 76 (D. Mass. 1999) ("[T]he reality that the Class would encounter significant, and potentially insurmountable obstacles to a litigated recovery underscores the reasonableness of the compromise set forth in the Settlement Agreement."). Plaintiff and the Settlement Class brought wage and hour claims under the FLSA and Massachusetts Wage Act alleging that Tufts failed to pay them proper wages, including overtime wages, in a timely fashion. However, pursuing this claim is risky. The existence and amount of damages, depend on Plaintiff's ability to prove Tufts's willfulness and lack of good faith. However, proving such against Tufts would be challenging because: (1) the Kronos Outage, which rendered the payroll services unusable, resulted from the UKG's negligence; and (2) Tufts had repaid employees for all of the improper payments following the Kronos Outage. Tufts has indicated that they would raise substantial defenses under the Massachusetts Wage Act ("MWA"), including that: (1) the MWA exempts from liability certain hospitals in Massachusetts who either operate as public charities or receive funding from the state

of Massachusetts or a Massachusetts' town; and (2) the MWA claim is preempted by federal law because it requires interpretation of the parties' collective bargaining agreement.  Frei-Pearson Decl. ¶ 12.  Moreover, in a series of cases arising from the Kronos Outage, this Court dismissed similar claims of nurses against the hospitals.  *See Fuller et al. v. UKG, Inc., et. al*., Case No. 22-cv-40082-ADB, ECF No. 43 (D. Mass. Sep. 15, 2023); *Taylor v. UKG, Inc. et. al*., Case No. 22-cv-11168-ADB, ECF No. 46 (D. Mass. Sep. 15, 2023); *Arpie v. UKG, Inc. et. al*., Case No. 22-cv-30096-ADB, ECF No. 51 (D. Mass. Sep. 15, 2023).  Although those cases are distinguishable, the fact remains that, Plaintiff and the Class faced substantial risks in establishing liability and damages and could have recovered zero from Tufts.

While Plaintiff is confident that she would overcome these arguments, the Settlement Agreement nonetheless avoids the risks inherent in further litigation, and therefore this factor weighs in favor of final approval.  Because the potential benefits of a favorable result at trial are discounted based on the risks associated with continued litigation, the proposed Settlement is well within the range of reasonableness.  As Judge Young noted in granting final approval in *In re Relafen,* 231 F.R.D. at 74, "[a]lthough fully litigating the claims through trial could possibly result in a higher recovery, the settlement represents a necessary compromise between inherent risks of doing so and a guaranteed cash recovery."

### 5.  Maintaining The Class Action Through Trial May Be Challenging.

Plaintiff is confident in her ability to maintain this action as a class through trial.  Nonetheless, she recognizes that there are substantial hurdles in being able to do so.  "There are numerous stages during the litigation at which certification could fail.  The Plaintiffs first have to successfully move to certify the class (conditionally in the case of FLSA) and would then have to survive a motion to decertify by Defendants."  *TJX,* 2016 U.S. Dist. LEXIS 136987 at *24-26.  Defendants may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).

Settlement eliminates this risk, expense, and delay. *See In re First Commodity Corp. Customer Accounts Litigation*, 119 F.R.D. 301, 314 (D. Mass. 1987) ("The proposed settlement, if finally approved, will save costly and extensive litigation . . . eliminate uncertainty concerning whether any or all of the plaintiffs would prevail if the class action issues were litigated and whether they would prevail on the merits."). This factor also favors final approval.

### 6.  Defendant's Ability To Withstand A Greater Judgement Is Neutral.

"This 'defendant oriented' consideration, is largely neutral as this is, evidently, a 'defendant[] with classic deep pockets.'" *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 73 (citing *In re Lupron*, 228 F.R.D. at 20). *See also Roberts v. TJX Cos*., 2016 U.S. Dist. LEXIS 136987 at *27 ("the seventh [*Grinnell*] factor on its own appears to be neutral"); *Hill v. State St. Corp.*, 2014 U.S. Dist. LEXIS 179702 at *25 (quoting *In re Sturm*, 2012 U.S. Dist. LEXIS 116930, at *19 (D. Conn. Aug. 20, 2012)) ("This factor is neutral with respect to approval of the Settlement. . . 'a defendant is not required to empty its coffers before a settlement can be found adequate'"). When parties "negotiate[] heavily over the settlement amount taking into account defendant's ability to pay a settlement that would compensate the class for their alleged unpaid wages . . . [e]ven if the defendant can withstand a greater judgement . . . this factor does not hinder granting final approval." *Reyes v. City of Rye*, 2017 U.S. Dist. LEXIS 103096, at *17 (S.D.N.Y. June 30, 2017). Thus, "[w]here, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair." *In re Sony SXRD Rear Projection TV Class Action Litig*., 2008 U.S. Dist. LEXIS 36093, at *23-24 (S.D.N.Y. May 1, 2008).

### 7.  The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation.

In assessing the fairness, reasonableness and adequacy of a settlement, courts balance the immediacy and certainty of recovery for a class against not only the result that could be achieved

through continued litigation, but also the risks associated with such litigation.  *See Hill v. State St.*

*Corp.,* 2014 U.S. Dist. LEXIS, 179702 at \*25-26 (quoting *Detroit v. Grinnell Corp.,* 495 F.2d 448,

462 (2d Cir. 1974)) ("[T]he court considers the reasonableness of the settlement in light of the

possible recovery in the litigation and risks of the litigation.  In analyzing these factors, the issue

for the court is not whether the settlement represents the best possible recovery, but how the

settlement relates to the strengths and weaknesses of the case.  The court 'consider[s] and weigh[s]

the nature of the claim, the possible defenses, the situation of the parties, and the exercise of

business judgment in determining whether the proposed settlement is reasonable[.]'").

The $494,000.00 settlement amount represents a good value given the attendant risks of

litigation discussed above, and thus weighs in favor of approving of the Settlement.  According to

Tufts's data production, the net underpayment due to Kronos Outage is approximately

$214,875.29.  As Tufts already repaid employees for the underpayments prior to reaching this

Settlement, the amount of $494,000.00 represents over 100% of Tufts's potential liability in

liquidated damages under the FLSA and MWA.  Frei-Pearson Decl. ¶ 18.  Under the Settlement,

each participating Settlement Class member shall receive a payment in proportion to their

approximate potential damages, with a minimum payment of $50.00.  According to the Settlement

Administrator's calculation, the average payment to participating Settlement Class members is

$840.37 and the highest is $4,062.12.  Frei-Pearson Decl. ¶ 19.  Participating Settlement Class

members in this Settlement will, ultimately, receive more money as liquidated damages than they

would have received if there had been no wage and hour violations.  Frei-Pearson Decl. ¶ 21.

Given the obstacles and uncertainties attendant to this Action, the proposed Settlement is within

the range of reasonableness, and is unquestionably better than the other possibility, little or no

recovery, if Tufts were to succeed at trial.  *See In re Lupron*, 228 F.R.D. 75, 97 (quoting *In re*

*GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd. Cir. 1995)) ("In applying this test of reasonableness, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" Therefore, this factor militates in favor of approving the Settlement.

**B.  The Settlement Is Procedurally Fair.**

**1.  The Settlement Was Reached After Arm's-Length Negotiations.**

"When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City Pshp. Co. v. Atlantic Acquisition Ltd. Pshp.*, 100 F.3d 1041, 1043 (1st Cir. 1996). *See also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 58-59 (1st Cir. 2021) (affirming decision granting final approval of the class settlement and the district court's finding that the "parties negotiated at arm's length" because the parties conducted a mediation before the Honorable Diane M. Welsh (ret.)).

This Settlement resulted from an arm's-length negotiation following motion practice, informal discovery, a lengthy mediation session before a respected mediator and former judge, the Honorable Diane M. Welsh (Ret.), and additional post-mediation settlement discussions. Frei-Pearson Decl. ¶¶ 11-15. The Parties exchanged relevant information to enable an accurate assessment of the merits of Plaintiff's claims. Frei-Pearson Decl. ¶ 11. Plaintiff has fully considered the merits and potential value of her claims and determined that the proposed settlement provides a reasonable and fair resolution. Frei-Pearson Decl. ¶ 13. This is a factor favoring approval of the Settlement. *See Lauture v. A.C. Moore Arts & Crafts, Inc.,* 2017 U.S. Dist. LEXIS 87928 at *2 (D. Mass. June 8, 2017) (approving a settlement reached after attending a private mediation session supervised by Judge Welsh, finding "[t]he settlement followed adequate informal discovery and arm's-length negotiations with the assistance of a mediator, a former

Magistrate Judge from the Eastern District of Pennsylvania, the Honorable Diane Welsh."); *Gulbankian v. MW Mfrs., Inc.,* 2014 U.S. Dist. LEXIS 177668 at *19 (D. Mass. Dec. 29, 2014) (finding the settlement to be fair, reasonable, and adequate because, *inter alia*, "[t]he negotiations leading to this Agreement were conducted diligently and at arm's length with the facilitation of a respected and experienced neutral mediator.").

Class Counsel include highly skilled advocates who are experienced in complex class action litigation.  Frei-Pearson Decl. ¶ 31.  Class Counsel were well positioned to evaluate the strengths and weaknesses of Plaintiff's claims owing to the extensive informal discovery in the Action and their extensive experience and knowledge in the area of complex and class action litigation.  Frei-Pearson Decl. ¶ 32.  Tufts is also represented by highly experienced attorneys. Frei-Pearson Decl. ¶ 33.  Thus, the presumption of reasonableness is applicable and supports a finding approving the settlement.  *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) (citing *Bussie,* 50 F. Supp. 2d at 72) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.")

### 2.  The Direct Notice To Settlement Class Members Satisfies Due Process And Is Reasonable.

When a court certifies a class under Rule 23(b)(3), notice must be served on all class members who can be identified through reasonable efforts.  Fed. R. Civ. P. 23(c)(2)(B).  For settlements, Rule 23(e) also instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Such notice "must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class."  *In re Compact Disc Minimum Advertised Price*

*Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003).  The notices in this case meet all of the above requirements.

This Court preliminarily approved the Settlement and ordered the Administrator to disseminate the Notice to Settlement Class members.  ECF No. 62.  On February 23, 2024, the Administrator sent the Notice by first class mail and email to all Settlement Class members., and on April 8, 2024, a reminder notice via postcard to Settlement Class members who had not made a claim.  The Administrator skip traced twenty-six (26) notice packets that were returned as undeliverable, and re-mailed the notice packets to thirteen (13) individuals with updated addresses.  To date, only thirteen (13) notice packets remain undeliverable.  Frei-Pearson Decl. ¶ 24.  The Notice advised Settlement Class members of the essential terms of the Settlement, set forth the procedure for completing the claim form, objecting to the Settlement or opting out of the Settlement.  Frei-Pearson Decl. ¶ 25.  Thus, the Notice provided the necessary information for Settlement Class members to make an informed decision regarding the proposed Settlement and was the best notice practicable under the circumstances in compliance with the Court's Preliminary Approval Order, Rule 23, and due process.  This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1)(B).  *See Bussie,* 50 F. Supp. 2d at 67 (finding notice by first class mail "is the best practicable notice under the circumstances").  *See also Compact Disc,* 216 F.R.D at 218. (finding "individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances."); Fed. R. Civ. P. 23(c)(2)(B) ("The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.").

## II.    APPROVAL OF THE FLSA SETTLEMENT
##         IS APPROPRIATE PURSUANT TO 29 U.S.C. § 216(b).

Plaintiff also requests that the Court approve the settlement of her FLSA claims.  Plaintiff

has brought her FLSA claims as a collective action.  29 U.S.C. § 216(b) provides that:

> An action to recover the liability prescribed in the preceding sentences may be
> maintained against any employer (including a public agency) in any Federal or
> State court of competent jurisdiction by any one or more employees for and in
> behalf of himself or themselves and other employees similarly situated. No
> employee shall be a party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed in the court in which such
> action is brought.

"Unlike a Rule 23 class action, collective actions under the FLSA 'require similarly

situated employees to affirmatively opt-in and be bound by any judgment.'"  *Anderson v. Team*

*Prior, Inc.*, 2022 U.S. Dist. LEXIS 196144, at *9 (D. Me. Oct 28, 2022) (quoting *Brayak v. New*

*Bos. Pie, Inc.,* 292 F. Supp. 3d 520, 523 (D. Mass. 2017)).  Thus, the FLSA "allows plaintiffs to

proceed collectively based on a lesser showing than that required by Rule 23."  *Klapatch v. BHI*

*Energy I Power Servs., LLC*, 2019 U.S. Dist. LEXIS 28134, at *3 (D. Mass. Feb 22, 2019) (quoting

*Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 359 (D. Me. 2010)).  Plaintiff need only

demonstrate that she "and other employees, with similar but not necessarily identical jobs, suffered

from a common unlawful policy or plan."  *Id.* at *4 (quoting *Prescott*, 729 F. Supp. 2d at 364).

In determining whether Plaintiff and her fellow employees are similarly situated, courts in

this circuit have adopted different approaches.  "The first is a 'two-step' approach involving

notification to potential class members of the putative collective action, followed by a final

determination as to whether the parties opting in are 'similarly situated' once discovery is

complete.  Alternatively, the court may simply adopt an approach coextensive with the

requirements of Fed. R. Civ. P. 23."  *Wise v. Patriot Resorts Corp.,* 2006 U.S. Dist. LEXIS 97992,

at *3 (D. Mass. Feb 15, 2006) (citing *Kane v. Gage Merchan. Serv., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001).

The first step was satisfied when this Court conditionally and preliminarily certified, for settlement purposes only, the FLSA Collective in its Preliminary Approval Order. ECF No. 62. As for the second step, "[i]n determining whether opt-in parties are 'similarly situated,' courts generally focus on the following factors: (1) the employment settings . . . (2) the various defenses available to Defendant that appear to be uniquely specific to individual plaintiffs; and (3) fairness and procedural considerations." *Wise,* 2006 U.S. Dist. LEXIS 97992 at *5. "Generally, employees are 'similarly situated' when they have similar (not identical) job duties and pay provisions, and are 'victims of a common policy or plan that violated the law.'" *Team Prior, Inc*., 2022 U.S. Dist. LEXIS 196144 at *9 (quoting *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) (citations omitted)).

Here, the Collective is similarly situated because all hourly employees at Tufts were subject to the same uniform policy: Tufts instituted a payment freeze after the Kronos Outage, which set the wages that hourly employees received based upon the hours they worked in the pay period prior to the payment freeze. Frei-Pearson Decl. ¶ 6. This uniform policy operated in the same manner on all hourly employees at Tufts and is suitable for collective treatment. Notice and reminder postcard notices have been sent to the Collective members as described above. The notice procedure is fair and effective. Settlement Class members had until May 23, 2024 to participate in, opt-out, or object to the Settlement. To date, no individual has objected or opted-out of the settlement. Frei-Pearson Decl. ¶ 28.

Given the foregoing, for purposes of settlement, this matter meets the requirements for collective action treatment and approval of the settlement is appropriate pursuant to 29 U.S.C. § 216(b).

## III.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS.

Plaintiff moved to preliminarily certify the Class and Collective for settlement purposes and the Court granted the motion on December 13, 2023.  ECF No. 62.  For the reasons above and for the reasons stated in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF Nos. 54-59), this Court should certify the Settlement Class.

## <u>CONCLUSION</u>

For the reasons set forth above, the Plaintiff respectfully requests the Court fully and finally approve the Settlement and enter the proposed Final Approval Order, attached as Exhibit 1 to Frei-Pearson Decl.

Dated:    White Plains, New York
          July 17, 2024

                    Respectfully submitted,

                    By: */s/ Jeremiah Frei-Pearson*
                    Jeremiah Frei-Pearson (*Pro Hac Vice*)
                    D. Greg Blankinship (BBO# 655430)
                    **FINKELSTEIN, BLANKINSHIP,**
                    **FREI-PEARSON & GARBER, LLP**
                    One North Broadway
                    Suite 900
                    White Plains, New York 10601
                    Tel: (914) 298-3281
                    jfrei-pearson@fbfglaw.com
                    gblankinship@fbfglaw.com

                    Jack J. Canzoneri
                    **MCDONALD LAMOND CANZONERI**
                    **LLC**
                    352 Turnpike Road, Suite 210
                    Southborough, MA 01772-1756

19

508-485-6600
jcanzoneri@masslaborlawyers.com

Kathy Jo Cook (BBO # 631389)
**SHEFF & COOK, LLC**
10 Tremont Street
7th Floor
Boston, MA 02108
kjcook@kjclawfirm.com

Philip J. Gordon (BBO# 630989)
Kristen M. Hurley (BBO# 658237)
**GORDON LAW GROUP, LLP**
585 Boylston Street
Boston, MA 02116
pgordon@gordonllp.com
khurley@gordonllp.com

*Attorneys for Plaintiff and the Collective and
Class*