UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY CORNACCHIA, on behalf herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>UKG INC. and TUFTS MEDICAL CENTER,<br><br>Defendants. | Civil Action No. 4:22-cv-40081-ABD |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNCONTESTED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD PAYMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................ 1
II. BACKGROUND AND SUMMARY OF THE SETTLEMENT TERMS ........................................ 4
A. Background Of Litigation. ........................................ 4
B. Summary Of The Settlement. ........................................ 6
C. The Class Has Reacted Well To The Settlement. ........................................ 6
III. THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD. ........................................ 7
IV. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES. ........................................ 9
A. Class Counsel Are Entitled to Compensation. ........................................ 9
B. The Requested Fee Is Justified Under the Lodestar Method. ........................................ 11
V. THE EXPENSES PLAINTIFFS INCURRED WERE BOTH REASONABLE AND NECESSARY TO ACHIEVE THE SETTLEMENT. ........................................ 15
VI. CONCLUSION ........................................ 15

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Andrade v. Jamestown Housing Authority*,
82 F.3d 1179 (1st Cir. 1996) .......... 12

*Barr v. Drizly, LLC*,
No. 20-11492, 2021 U.S. Dist. LEXIS 217158 (D. Mass. Nov. 4, 2021) .......... 15

*Bettencourt v. Jeanne D'Arc Credit Union*,
No. 17-12548, 2020 U.S. Dist. LEXIS 106469 (D. Mass. June 17, 2020) .......... 8

*BioPoint, Inc. v. Dickhaut*,
No. 20-10118, 2023 U.S. Dist. LEXIS 118565 (D. Mass. July 11, 2023) .......... 12, 13, 14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 9

*Bozak v. FedEx Ground Package Sys.*,
No. 11-00738, 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014) .......... 8

*Carlson v. Target Enter.*,
Inc., 447 F. Supp. 3d 1 (D. Mass. 2020) .......... 7

*Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Ray Haluch Gravel Co.*,
745 F.3d 1 (1st Cir. 2014) .......... 14

*Citigroup Inc. v. Seade*,
No. 21-10413, 2023 U.S. Dist. LEXIS 2758 (S.D.N.Y. Jan. 6, 2023) .......... 13-14

*Conley v. Sears Roebuck and Co.*,
222 B.R. 181(D. Mass. 1998) .......... 14

*Gay Officers Action League v. Puerto Rico*,
247 F.3d 288 (1st Cir. 2001) .......... 11

*Gonpo v. Sonam's Stonewalls & Art, LLC*,
No. 16-40138, 2021 U.S. Dist. LEXIS 88853 (D. Mass. April 1, 2021) .......... 15

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
No. 09-2067, 2014 U.S. Dist. LEXIS 125041 (D. Mass. Sept. 8, 2014) .......... 15

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999) .......... 9, 15

*In re Lupron Mktg. & Sales Practices Litig.*,
No. 01-10861, 2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) .......... 10

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
630 F. Supp. 3d 241 (D. Mass. September 19, 2022) .......... 8, 11

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .......... 7, 11, 12, 14

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294, 298-299, 303-04 (3rd Cir. 2005) .......... 14

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
No. 17-10219, 2017 U.S. Dist. LEXIS 87928 .......... 7, 8, 9

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y 2002) .......... 11

*Marrotta v. Suffolk County*,
726 F. Supp. 2d 1 (D. Mass. Jul. 29, 2010) .......... 11

*Noll v. Flowers Foods Inc.*,
No. 15-00493, 2022 U.S. Dist. LEXIS 75349 (D. Me, April 26, 2022) .......... 10

*Norkunas v. Brossi Bros. Ltd. P'ship*,
No. 10-11949, 2012 U.S. Dist. LEXIS 30474 .......... 12

*Roberts v. TJX Cos.*,
No. 13-13142, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sept. 30, 2016) .......... 10, 14

*San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) .......... 10

*Scovil v. FedEx Ground Package Sys.*,
No. 10-515, 2014 U.S. Dist. LEXIS 33361 (D. Me. Mar. 14, 2014) .......... 7-8, 8

*Velez v. Majik Cleaning Serv.*,
No. 03-8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 25, 2007) .......... 8

**Statutes**

Fed. R. Civ. P. 23 .......... 5, 9, 14

29 U.S.C. § 216 .......... 5, 15

29 U.S.C. §§ 201 .......... 4, 5

Mass. Gen. Laws Ch. 149, § 150 .......... 15

Mary Cornacchia ("Plaintiff") submits this Memorandum of Law in support of her uncontested motion for attorneys' fees, expenses, and service award payments.

## I. INTRODUCTION

Plaintiff and her counsel, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, Sheff & Cook, LLC, Gordon Law Group, LLP, and McDonald Lamond Canzoneri LLC (collectively, "Class Counsel"), have achieved an excellent result for the Class. Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.)" ¶12. They succeeded in securing a settlement ("Settlement") with Defendant Tufts Medical Center Inc. ("Tufts"; collectively, the "Settling Parties") that provides a settlement fund in the value of $494,000.00, which shall be distributed pursuant to the settlement and release agreement (the "Settlement Agreement"). Settlement Agreement ¶ V.a.

Under the Settlement, Class and Collective (the "Settlement Class") members shall receive a payment in proportion to their approximate potential damages, with a minimum payment of $50.00. Settlement Agreement ¶ V.c.(5); Frei-Pearson Decl. ¶ 19. According to the Settlement Administrator's calculation, the average payment to participating Settlement Class members is $840.37 and the highest is $4,062.12. *Id*. Participating Settlement Class members in this settlement will, ultimately, receive more money as liquidated damages than they would have received if there had been no wage and hour violations. Settlement Agreement ¶ V.e; Frei-Pearson Decl. ¶ 23.

This Court preliminarily approved the Settlement and ordered CAC Service Group, LLC (the "Administrator") to disseminate a notice by first class mail and by email to known Settlement Class members and a reminder notice via postcard. ECF No. 62. Plaintiff respectfully requests that the Court approve her request for a service award of $8,500.00 for the Plaintiff, for attorneys' fees of $121,882.65, and for reimbursement of expenses and costs of $7,436.13.

The requested service award and fee awards are separate and apart from the benefit received by Settlement Class members and in no way diminish Settlement Class members' recovery. Indeed, if the Court were to deny the requested fee award, in whole or in part, none of the fees that Class Counsel are requesting would be paid to the Class. That money would just remain with Tufts. Settlement Agreement ¶¶ V.c(2), VI(a). Thus, rejecting or reducing the service award or attorneys' fee request would simply benefit Tufts, without any offsetting gain to the Settlement Class. Reducing the requested service awards or fees could have a chilling effect on class action litigation in Massachusetts.

Plaintiff was willing to put her name on this lawsuit against her employer; she was heavily involved in this litigation, and she repeatedly demonstrated that her priority was achieving the best possible result for the Class and Collective. Indeed, Plaintiff dismissed the possibility of individual resolution, participated in the litigation and settlement process, and worked diligently with her union and with Class Counsel to ensure that Class members participated in the Settlement. Frei-Pearson Decl. ¶ 17. Plaintiff respectfully submits that she should be awarded $8,500.00 as a service award.

Significantly, this Settlement is substantially stronger than similar settlements stemming from other employers' failure to pay proper wages as a result of payroll issues caused by payroll providers as a result of the same software outage. For example, in recently approved settlements of *Estevez v. Change Healthcare Inc.*, Case No 3:22-cv-327 (M.D.Tenn.) and *Woodruff v. Kaiser Aluminum Corp*., No. 22-00333, ECF No. 31 (M.D. Tenn.), counsel recovered significantly less money per class member than did Class Counsel. *Compare*,, *Estevez*., No 3:22-cv-327, ECF No. 34 (June 13, 2023) (awarding $674,500 in attorneys' fees, which equal 35.5% of the gross settlement amount, and awarding $5,252.70 in costs in a reversionary settlement for employees

affected by the Kronos Outage where participating class members had an average recovery of $343.70 and a minimum recovery of $50); *Woodruff*, No. 22-00333, ECF No. 31 (May 4, 2023) (awarding $200,000 in attorneys' fees, or 40% of the gross settlement amount, and $5,252.70, in costs in a reversionary settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $205 and a minimum recovery of $40); *see also Marshall v. Coca-Cola Consolidated Inc.*, Case No. 22-00214, ECF. No. 22 (W.D.N.C. June 27, 2023) (preliminarily approving a settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $244 and a minimum recovery of $40, and where class counsel requested fees of $1,220,000, which equaled 40% of the gross settlement amount, plus out-of-pocket expenses). Significantly, Class Counsel obtained a better result than in those cases, and the fee request here is in line with the requests that courts deemed reasonable in those cases.

Moreover, in a series of cases arising from the Kronos Outage, this Court dismissed similar claims of nurses against the hospitals. *See Fuller et al. v. UKG, Inc., et. al.*, Case No. 22-cv-40082-ADB, ECF No. 43 (D. Mass. Sep. 15, 2023); *Taylor v. UKG, Inc. et. al.*, Case No. 22-cv-11168-ADB, ECF No. 46 (D. Mass. Sep. 15, 2023); *Arpie v. UKG, Inc. et. al.*, Case No. 22-cv-30096-ADB, ECF No. 51 (D. Mass. Sep. 15, 2023). Although those cases are distinguishable, the fact remains that, absent Class Counsel's skill in negotiating this settlement, Plaintiff and the Class could have recovered zero from Tufts.

Class Counsel seek $121,882.65 in attorneys' fees, plus $7,436.13 in expenses and costs. The requested attorneys' fees amount includes Class Counsel' actual lodestar amount of $116,882.65, and $5,000 estimated attorneys' fees and expenses, for additional time that will be spent by Class Counsel to take this case through the final settlement approval process, including

preparation for, and participation in the final approval hearing, and responding to Settlement Class members' inquiries, and additional expenses that will incur by Class Counsel to attend the final approval hearing. Frei-Pearson Decl. ¶ 37. The amount requested falls well within the range of attorneys' fees awarded by courts within this Circuit using the lodestar methodology. And so, as many courts have approved similar fee requests in related cases, Plaintiff respectfully submits that this Court should approve the requested attorneys' fees.

## II. BACKGROUND AND SUMMARY OF THE SETTLEMENT TERMS

### A. Background Of Litigation.

Tufts employed hourly employees to work in numerous sectors of the health care industry. Class Action Complaint, ECF No. 1 ("Complaint" or "Compl.") ¶¶ 1,16. Plaintiff and Settlement Class members' principal job duties included, but were not limited to, providing care for Tufts's patients as registered nurses. Compl. ¶ 17. On or about December 11, 2021, UKG, Inc. ("UKG"),[1] the timekeeping provider for Tufts, negligently allowed the Kronos Outage to happen, and as a result Tufts was unable to accurately pay Settlement Class members. Compl. ¶ 39.

As a result of the Kronos Outage, Tufts instituted a "payment freeze" for all hourly employees, such that the pay for each pay period following that date was set, arbitrarily, to the period prior to the freeze, with limited exception. Compl. ¶ 22. As a result, Plaintiff and Settlement Class members received payment for fewer hours than they worked. Compl. ¶¶ 41-42. Before reaching this Settlement, Tufts repaid employees for all of the improper payments following the Kronos Outage. Frei-Pearson Decl. ¶ 22.

[1] Plaintiff has not settled her claims against the UKG, and Plaintiff intends to pursue those claims separately. Frei-Pearson Decl. ¶16.

On July 20, 2022, Plaintiff Mary Cornacchia, represented by Class Counsel, commenced litigation against Tufts under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the Massachusetts Wage Act for underpayments resulting from the Kronos Outage. *Id.* ¶ 10; ECF No. 1.

Plaintiff risked possible retaliation by putting her name on this litigation, and did so because she believed that any risk to her was outweighed by the importance of their colleagues receiving proper compensation. Plaintiff regularly communicated with Class Counsel and were actively involved in settlement discussions. Frei-Pearson Decl. ¶ 17. Plaintiff is an active member of the Massachusetts Nurse's Association ("MNA"). *Id*. ¶ 6. As an Active member of the MNA, Plaintiff assisted Class Counsel with providing information about the settlement to union representatives and to Class members, and Plaintiff herself answered Settlement Class members' questions. *Id*. Throughout the duration of the litigation, Plaintiff has done everything asked of her to assist the class and collective. Frei-Pearson Decl. ¶ 7.

The Settling Parties engaged in preliminary discovery. *Id*. ¶ 13. After each side was in a position to evaluate the merits, strengths and weaknesses of the claims or defenses, the Settling Parties agreed to engage in arm's length negotiations, concluding in a mediation with an experienced mediator, Ret. Judge Diane Welsh, of JAMS. *Id*. The Settling Parties reached an agreement in principle with Judge Welsh's assistance. Frei-Pearson Decl. ¶ 15.

Following continued negotiations over settlement details, Plaintiff and Tufts entered into a class settlement agreement, the Settlement Agreement, to resolve the claims of Plaintiff, employees who opt-in to a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), (the "Collective"), and a class of employees under Rule 23 (the "Class") (collectively, the "Settlement Class") against Tufts for issues relating to the Kronos Outage. On December 14,

2023, the Court preliminarily approved the Settlement and approved the form and distribution of notice. ECF No. 62.

### B. Summary Of The Settlement.

The Settlement requires Tufts to fund an all-in payment of $494,000.00, that will fund direct payments to Settlement Class members who opt-in (collectively, the "Claimants"), attorneys' fees and litigation costs, settlement administration costs, and service award payment. Settlement Agreement ¶ V.a. The Claims Administrator shall allocate the payments to Settlement Class members in proportion to each member's approximate potential damages. *Id.* ¶ V.c.(5). Unclaimed funds revert to Tufts. *Id.* ¶ V.c.(6). The average payment to Claimants is $840.37, and the highest payment to Claimants is $4,062.12. Frei-Pearson Decl. ¶ 19. All Claimants shall receive a minimum of $50.00. Settlement Agreement ¶ V.c.(5). Claimants in this settlement will, ultimately, receive more money as liquidated damages than they would have received if there had been no wage and hour violations. Frei-Pearson Decl. ¶ 23. We originally estimated there to be 650 individuals in the Settlement Class entitled to receive payment under the Settlement. *Id.* ¶ 21. In accordance with the Settlement Agreement, Tufts produced a class list. Settlement Agreement. This class list contained 522 individuals. *Id.*

### C. The Class Has Reacted Well To The Settlement.

CAC sent the notice packet to Settlement Class members by first class mail and email on February 23, 2024, and a reminder notice via postcard to Settlement Class members who had not made a claim on April 8, 2024. Frei-Pearson Decl. ¶ 25. CAC skip traced twenty-six (26) notice packets that were returned as undeliverable, and re-mailed the notice packets to thirteen (13) individuals with updated addresses. To date, only thirteen (13) notice packets remain undeliverable. Declaration of Jeffrey D. Johnson ("Administrator Decl.") ¶9. Plaintiff and Class

Counsel have worked diligently to inform Settlement Class members about the settlement. Class Counsel fielded numerous questions from Settlement Class members. Frei-Pearson Decl. ¶ 26. Class Counsel has also been in regular contact with the MNA and has answered questions and provided information about the settlement to union representatives. *Id.* ¶ 27.

The submission deadline for the Settlement was May 23, 2024. *Id.* ¶ 28. To date, the Settlement Class's reaction to the Settlement has been excellent. To date, 141 individuals, or 27.01% of Settlement Class members have participated. *Id.* ¶ 29. As of the same date, zero Settlement Class members have objected or opted out of the Settlement. *Id.* ¶ 30.

## III. THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD.

The Court should approve the requested service award. Plaintiffs in class and collective actions play a crucial role in bringing justice to those who may otherwise have no access to judicial enforcement of their rights. *Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 U.S. Dist. LEXIS 87928, at *5-6 (D. Mass. June 8, 2017). These awards recognize the burdens assumed by plaintiffs in instituting and prosecuting the actions, the time spent communicating with counsel and fulfilling litigation responsibilities, and the risks that plaintiffs bear in bringing the lawsuit. *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."); *Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) ("Incentive awards are an appropriate means for encouraging individuals to undertake the responsibility of representative lawsuits.").

Further, the requested service awards of $8,500.00 for the Plaintiff falls well within the range of service awards approved in prior cases. "[I]n wage and hour cases, awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher." *Scovil v.*

*FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 33361, at *6-7 (D. Me. Mar. 14, 2014) (approving $15,000 incentive awards to plaintiffs who provided assistance throughout the lawsuit and discussing comparable awards in other district courts). *See, e.g.*, *Lauture*, 2017 U.S. Dist. LEXIS 87928, at *9 (D. Mass. June 8, 2017) (awarding service awards of $15,000 each to the two named plaintiffs); *Brent S. v. Blue Cross & Blue Shield of Mass.* No. 17-11569 (D. Mass., April 11, 2023) (awarding service awards of $20,000 to each of the five plaintiffs); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 248 (D. Mass. September 19, 2022) (awarding $50,000 service awards for each of the two class representatives); *Bettencourt v. Jeanne D'Arc Credit Union*, 2020 U.S. Dist. LEXIS 106469 (D. Mass. June 17, 2020) (awarding a service award of $10,000).

Courts assess service awards by considering "(1) the steps these individuals have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, (3) the amount of time and effort they have expended in pursuing the litigation, and (4) any negative effects that they have risked." *Lauture*, 2017 U.S. Dist. LEXIS 87928, at *7 (citing *Scovil*, 2014 U.S. Dist. LEXIS 33361, at *22).

Plaintiff put considerable time and effort into protecting the Settlement Class's interests. Plaintiff conferred with Class Counsel regarding her claims, assisted in the preparation of the Complaint, assisted Class Counsel in searching for and provided relevant evidence, helped to notify Settlement Class members through, interfaced with the MNA, and was involved in the mediation and settlement process. Frei-Pearson Decl. ¶ 5. Without Plaintiff's efforts, there would be no settlement and the eligible Settlement Class members would not be entitled to any relief.

Furthermore, Plaintiff undertook substantial risk by bringing this public action. *See Bozak v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 106042, at *11-12 (D. Conn. July 31,

2014) (quoting *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 25, 2007)) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks. . . Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts." *Lauture*, 2017 U.S. Dist. LEXIS 87928, at *9 (citations omitted). For these reasons the Court should approve the requested Service Award.

## IV. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES.

### A. Class Counsel Are Entitled to Compensation.

The Supreme Court has long held that "a lawyer who recovers a common fund" from which members of a class are compensated for a common injury, the attorney is entitled to "a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax").

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and promote private enforcement of, and compliance with, employment laws. Rule 23 authorizes the court, when approving a class action settlement, to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In *Roberts v. TJX Cos.*, this Court recognized that "the FLSA

provides for the award of a 'reasonable attorney's fee' and costs to a prevailing plaintiff[.]" *Roberts v. TJX Cos*., 2016 U.S. Dist. LEXIS 136987, at *29-30 (D. Mass. Sept. 30, 2016) (Burroughs, J.). The Honorable Judge Stearns observed that:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*In re Lupron Mktg. & Sales Practices Litig*., 2005 U.S. Dist. LEXIS 17456, at *16 (D. Mass. Aug. 17, 2005).

The First Circuit recognizes two general methods for awarding attorneys' fees in class actions: "[1] the 'percentage of fund' method, under which class counsel is awarded a fee equal to a 'reasonable percentage of the fund recovered for those benefitted by the litigation,' and [2] the 'lodestar' method, under which the fee awarded to class counsel is calculated based on the amount that the attorneys could have billed the class for their time." *Noll v. Flowers Foods Inc*., 2022 U.S. Dist. LEXIS 75349, at *24-25 (D. Me, April 26, 2022) (citing *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995).

Here, although under the Settlement Agreement, Class Counsel are entitled to $165,000, one third of the total Settlement fund value, Class Counsel only seek $121,882.65 in attorneys' fees, plus $7,436.13 in expenses and costs pursuant to lodestar method. The requested attorneys' fees amount includes Class Counsel' actual lodestar amount, and $5,000 estimated attorneys' fees and expenses, for additional time that will be spent by Class Counsel to take this case through the final settlement approval process, including preparation for, and participation in the final approval

hearing, and responding to Settlement Class members' inquiries, and additional expenses that will incur by Class Counsel to attend the final approval hearing.

Class Counsel's request for $121,882.65 in attorneys' fees is reasonable under the lodestar method, as it reflects Class Counsel's actual lodestar. Frei-Pearson Decl. ¶ 37.

**B. The Requested Fee Is Justified Under the Lodestar Method.**

Under the lodestar method, a court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect factors such as the quality of counsel's work. *See, e.g., Marrotta v. Suffolk County*, 726 F. Supp. 2d 1, 4 (D. Mass. Jul. 29, 2010) ("It is well settled that a reasonable amount of fees is determined pursuant to the 'lodestar approach,' which involves calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"; citing *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001)); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y 2002) (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted).

"The typical range of the lodestar multiplier allowed by this Court is between one and 2.7. Most multipliers fall between one and four, although there is significant variation." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 246 (D. Mass. 2022) (citing *In re Relafen Antitrust Litigation*, 231 F.R.D. at 82).

The fee requested in this case is more than justified under the lodestar method. Class Counsel devoted in excess of 251 hours to this action, including time spent on conducting a thorough investigation, researching the facts and the law, drafting the complaint, opposing a

motion to dismiss, reviewing documents and information produced by Tufts, preparing for and attending mediation before Honorable Diane M. Welsh (ret.), negotiating the settlement, preparing and editing the settlement papers, preparing the papers for settlement approval, and responding to Settlement Class members' inquiries. Frei-Pearson Decl. ¶ 38. After multiplying the time spent with the reasonable hourly rate for each attorney, the total amount of attorneys' fees sum up to $116,882.65. This number does not include additional time that will be spent by Class Counsel to take this case through the final settlement approval process, including preparation for, and participation in the final approval hearing, and responding to Settlement Class members' inquiries, and additional expenses that will incur by Class Counsel to attend the final approval hearing, estimated to be $5,000.00. Class Counsel's requested amount of $121,882.65 reflects Class Counsel's actual lodestar. *Id.* ¶ 37.

"To determine a reasonable hourly rate, the court applies the prevailing rates in the 'relevant community' (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Norkunas v. Brossi Bros. Ltd. P'ship*, 2012 U.S. Dist. LEXIS 30474, *24 (D. Mass. March 7, 2012) (citing *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1190 (1st Cir. 1996)). Class Counsel include highly skilled advocates who are experienced in complex class action litigation. *See* Frei-Pearson Decl. ¶ 35; FBFG Firm Resume (Ex. 1 to Frei-Pearson Decl.).

Here, the hourly rates charged by Class Counsel ranged from $180.00 - $1,050.00. Frei-Pearson Decl. ¶ 39; Declaration of Kathy Cook ("Cook Decl.") ¶ 18 and Exhibit 1; Declaration of Jack Canzoneri ("Canzoneri Decl.") ¶ 12 and Exhibit 1; Declaration of Philip Gordon ("Gordon Decl.") ¶ 27. Courts routinely approve hourly rates in this range. *See, e.g.*, *BioPoint, Inc. v. Dickhaut*, 2023 U.S. Dist. LEXIS 118565, at *3 (D. Mass. July 11, 2023) (awarding attorneys'

fees at an average billing rate of $489 to $956); *Villanueva v. Wells Fargo Bank, N.A.*, No. 13-5429 (S.D.N.Y. Feb. 13, 2017), ECF No. 116 (approving FBFG's hourly rates); *Hamlen v. Gateway Energy Services Corp.*, ECF No. 16-03526 (S.D.N.Y. Sept. 13, 2019), ECF No. 141 (same); *Sackin v. TransPerfect Global, Inc.*, No. 17-01469 (S.D.N.Y. Dec. 14, 2018), ECF No. 74 (same); *Thomspon et al. v. Parts Authority, LLC et al.*, No. 500141/2022 (N.Y. Sup. Ct. Sep. 6, 2022), NYSCEF No. 38 (same); *Farruggio et al. v. 918 James Receiver, LLC et al.*, No. 003831/2017(N.Y. Sup. Ct. Apr. 23, 2021), NYSCEF No. 632 (same); *Claridge v. North American Power & Gas, LLC*, No. 15-1261 at 6 (S.D.N.Y. June 29, 2018), ECF No. 152 (same). The rates are the usual and customary rates that Plaintiffs' counsel charge to paying clients. Frei-Pearson Decl. ¶ 40.

Furthermore, these hourly rates are consistent with the "Laffey Matrix" used by courts to assess the reasonableness of attorney fees. *See* Laffey Matrix, http://www.laffeymatrix.com/see.html (last visited June 28, 2024) (establishing a current rate of $1,057 per hour for attorneys with 20 years or more of experience, $878 per hour for attorneys with 11-19 years of experience, $777 for attorneys with 8-10 years of experience, $538 for attorneys with 4-7 years of experience, and $437 for attorneys with 1-3 years of experience, $239 for paralegals/law clerks). The rates are also consistent with annual reviews of the competitive and relevant legal marketplace in Boston. The market-rate survey for the year 2020, reflects that:

> The median rate in Boston in 2020 for partners with 26-30 years' experience at 1st Quartile firms was $1,116 per hour. The median rate was $946 per hour and the lowest rate was $788 per hour. *See* Gordon Decl. Exhibit A.
>
> The median rate in Boston in 2020 for partners with 21-25 years' experience at 1st Quartile firms was $1096 per hour. The median rate was $872 per hour and the lowest rate was $727 per hour. *See Id.*

The hourly rate charged by non-attorney professionals is $180.00. Frei-Pearson Decl. ¶ 39. Courts typically approve hourly rates for non-attorney professionals like paralegals up to $200.00 per hour. *Citigroup Inc. v. Seade*, No. 21-10413, 2023 U.S. Dist. LEXIS 2758, at *5 (S.D.N.Y. Jan. 6, 2023) (noting that courts approve hourly rates between $150 and $200 for paralegals). *See also BioPoint, Inc.*, 2023 U.S. Dist. LEXIS 118565 at *3 (court approved a rate of $376 for a paralegal). Accordingly, the non-attorney professionals' hourly rates are also reasonable.

Class Counsel's requested amount of $121,882.65 reflects Class Counsel's actual lodestar amount, or with a multiplier of 1. This is far below the commonly accepted multiplier range in this circuit. In *In re Relafen Antitrust Litig.*, Judge Young held that:

> A multiplier of 2.02 is appropriate. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-299, 303-04 (3rd Cir. 2005)(finding no abuse of discretion where district court approved attorneys fees with a "fairly common" lodestar multiplier of 4.07, despite objection that lodestar multiplier could not be above 3.); *Vizcaino*, 290 F.3d at 1051 n.6 (charting attorney's fees awards and multipliers in common fund cases of $50-$200 million from 1996-2001, and noting "a range of 0.6-19.6 with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range"); *Conley v. Sears Roebuck and Co.*, 222 B.R. 181 (awarding multiplier of 8.9 to arrive at a $ 7,500,000 fee).

*In re Relafen Antitrust Litig*., 231 F.R.D. at 82. Indeed, in *TJX Cos.*, this Court approved multiplier of 1.96. *TJX Cos.*, 2016 U.S. Dist. LEXIS 136987 at *44 (citing *Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Ray Haluch Gravel Co*., 745 F.3d 1, 5 (1st Cir. 2014)).

The requested attorneys' fees sought here includes a far lower than multipliers that are consistently found reasonable in this Circuit and is fully justified in light of the effort undertaken, the recovery achieved, and the efficiency with which this case was litigated. In sum, the fee sought here is reasonable and within the range approved in past cases.

## V. THE EXPENSES PLAINTIFFS INCURRED WERE BOTH REASONABLE AND NECESSARY TO ACHIEVE THE SETTLEMENT.

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Similarly, the FLSA provides for the award of a "reasonable attorney's fee" and costs to a prevailing plaintiff. *See* 29 U.S.C. § 216(b). Under Massachusetts wage statutes, "[a] prevailing plaintiff 'shall also be awarded the costs of the litigation.'" *Gonpo v. Sonam's Stonewalls & Art, LLC*, 2021 U.S. Dist. LEXIS 88853, at *18 (D. Mass. April 1, 2021) (quoting Mass. Gen. Laws ch. 149, § 150).

Class Counsel incurred $7,436.13 in litigation expenses, all on a contingency basis. Frei-Pearson Decl. ¶ 45. Those expenses include filing fees, mailing costs, research fees, and mediation fees. *Id*. These costs were reasonable and necessary and should be reimbursed in full. *See* 29 U.S.C. § 216(b) (entitling plaintiff's counsel to "costs of the action"). *See also In re Celexa & Lexapro Mktg. & Sales Practices Litig*., 2014 U.S. Dist. LEXIS 125041, at *25 (D. Mass. Sept. 8, 2014) (awarding reimbursement of $325,000 in out-of-pocket expenses in a class settlement) (citing *In re Fidelity/Micron Securities Litig.*, 167 F.3d 735, 737 (1st Cir. 1999)); *Barr v. Drizly, LLC*, 2021 U.S. Dist. LEXIS 217158 (D. Mass. Nov. 4, 2021) (awarding attorneys' fees of $1,186,967.05 and expenses of $133,032.95 in a class settlement).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion for service awards, attorneys' fees, and costs in the amounts requested.

Dated: July 17, 2024

Respectfully submitted,

*s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
**FINKELSTEIN, BLANKINSHIP,**

**FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com

Jack J. Canzoneri
**MCDONALD LAMOND CANZONERI LLC**
352 Turnpike Road, Suite 210
Southborough, MA 01772-1756
508-485-6600
jcanzoneri@masslaborlawyers.com

Kathy J Cook
**SHEFF & COOK, LLC**
10 Tremont Street 7th Floor
Boston, MA 02108
Tel: 617-549-5237
kjcook@sheffandcook.com

Philip J. Gordon
**GORDON LAW GROUP**
585 Boylston Street
Boston, MA 02116
Tel: 617-536-1800
pgordon@gordonllp.Com

*Attorneys for Plaintiff and the Class*